**\*NOT FOR PUBLICATION\***

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

———————————————————
                                                  :
In re: ERNEST J. KEISE AND                        :
MARCIA E. KEISE,                                  :          Civil Action No. 17-1832 (FLW)
                                                  :
                                  Debtors.        :                  **OPINION**
                                                  :
SEAVIEW AT SHARK RIVER ISLAND                     :
HOMEOWNERS ASSOCIATION, INC.,                     :
                                                  :
                                  Appellants,     :
                                                  :
            v.                                    :
                                                  :
ERNEST J. KEISE and                               :
MARCIA E. KEISE,                                  :
                                                  :
                                  Appellees.      :
———————————————————                               :

**WOLFSON, United States District Judge:**

This matter comes before the Court on the appeal of Seaview at Shark River Island
Homeowners Association, Inc. (the "Association") from a decision of the United States
Bankruptcy Court for the District of New Jersey, which, over the Association's objection,
confirmed the bankruptcy plan (the "Plan") proposed by debtors Ernest J. Keise and Marcia E.
Keise (collectively, "Debtors").  *See In re Keise*, 564 B.R. 255, 266 (Bankr. D.N.J. 2017).  The
issue on appeal is whether the lien held by the Association for unpaid assessments is a
consensual lien in Debtors' principal residence, or whether the lien is statutory, arising under the
New Jersey Condominium Act, N.J.S.A. § 46:8B-1, *et seq.* (the "Condominium Act" or "Act").
After finding, as a threshold matter, that the Condominium Act applied to the Association, the
Bankruptcy Court held that the Association's claim was secured by two separate liens, one

1

consensual and one statutory.  This Court has jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1) and (c)(2).

For the reasons that follow, the decision of the Bankruptcy Court is reversed, and this matter is remanded for further proceedings consistent with this Opinion.  Specifically, I find that the Bankruptcy Court erred in determining that it was bound, as a matter of law, to find that the Condominium Act governs the Association in this case.  Rather, to determine whether the Condominium Act applies to the Association, the Bankruptcy Court must analyze whether the common interest development at issue constitutes a "condominium," as that term is defined under the Condominium Act.  Accordingly, I will remand this matter to the Bankruptcy Court, where, after developing the requisite factual record, the Bankruptcy Court shall make that determination in the first instance, and then rule accordingly.

I.    **BACKGROUND**

The background of this dispute was set forth in detail in the March 2, 2017 decision of the Bankruptcy Court, and thus, the Court will only recount the facts relevant to the instant appeal.[1]

A.    **Factual Background**

Debtors are the owners of the unit of real property located at 206 Schooner Circle in Neptune, New Jersey (the "Property").  The Property is located within a common interest community governed by the Association, and comprised of single-family townhomes situated on individually-owned lots.

---

[1] The facts are drawn from the record supplied on appeal.

On June 30, 2016, Debtors filed a voluntary petition under chapter 13 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), as well as their Plan.[2]  Debtors valued the Property at $360,000, with a first mortgage held by The Bank of New York Mellon ("New York Mellon") in the amount of $362,973.30.  The Plan sought to modify a claim (the "Claim"), pursuant to 11 U.S.C. § 1322(b)(2), for unpaid assessments owing the Association in the amount of $15,125.99.  Specifically, the Claim consisted of:  (1) $9,659.46 of secured debt, representing the remaining balance of an original lien for unpaid assessments; and (2) $5,466.53 of unsecured debt, representing the arrears owed to the Association that were not part of the original lien, and arose after the filing of the lien.  Under the Plan, Debtors proposed to pay $1,710.00, representing six months of the the secured portion of the Claim, as provided for under § 46:8B-21 of the Condominium Act,[3] with the remainder of the Claim to be treated as unsecured and stripped off.  The Association objected to confirmation of the Plan, arguing that the entirety of its secured lien was protected from modification under that "anti-modification" clause of 11 U.S.C. § 1322(b)(2).[4]

---

[2] Prior to filing their chapter 13 petition, Debtors previously filed for bankruptcy under chapter 7 of the Bankruptcy Code, receiving a discharge on November 20, 2015.

[3] Specifically, N.J.S.A. § 46:8B-21 provides, in relevant part, as follows:

> b. A lien recorded pursuant to subsection a. of this section shall have a limited priority over prior recorded mortgages and other liens, except for municipal liens or liens for federal taxes, to the extent provided in this subsection. This priority shall be limited as follows:
>
> > (1) To a lien which is the result of customary condominium assessments as defined herein, the amount of which shall not exceed the aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien.

N.J.S.A. § 46:8B-21.

[4] Pursuant to 11 U.S.C. § 1322(b)(2), a chapter 13 plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2) (emphasis added).

### B.     The Bankruptcy Court's Decision

On March 2, 2017, the Bankruptcy Court issued a written decision denying the Association's objection and confirming the Plan.  *In re Keise*, 564 B.R. at 266.  At the outset, the Bankruptcy Court framed the question presented on the Association's objection as "whether the lien held by a New Jersey condominium or homeowners association is a statutory lien or consensual lien?"  *Id.* at 256.  The answer to this question was significant, the Bankruptcy Court explained, because it dictated whether the Claim secured by the Association could be modified under the Plan, or, alternatively, whether it was protected from modification under 11 U.S.C. § 1322(b)(2).  *Id.*

To properly frame the precise issue confronting the Bankruptcy Court, this Court must – as the Bankruptcy Court did below – set forth the pertinent legal standards governing this case. Three categories of liens exist under the Bankruptcy Code:  (1) judicial liens[5]; (2) consensual liens; and (3) statutory liens.  The Bankruptcy Code defines a consensual lien, or "security agreement," as a lien "that creates or provides for a security interest."  11 U.S.C. § 101(50).  In other words, the terms "consensual lien" and "security interest" are synonymous under the Bankruptcy Code.  *See id.* § 101(51) (defining "security interest" as a "lien created by agreement."); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989) (observing that consensual liens are "called a 'security interest' by the Code.").  Conversely, the Bankruptcy Code defines a "statutory lien" as a "lien *arising solely by force of a statute* on specified circumstances or conditions, . . . *but does not include security interest* or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such

---

[5] The Bankruptcy Code defines a "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."  11 U.S.C. § 101(36).

interest or lien is made fully effective by statute." 11 U.S.C. § 101(53) (emphasis added).  While

the Bankruptcy Code does not expressly state that the three types of liens are mutually exclusive,

the legislative history underlying the Code supports such an interpretation.  *See* H.R. REP. 95-

595, 312, 1978 U.S.C.C.A.N. 5963, 6269 ("In general, the concept of lien is divided into three

kinds:  judicial liens, security interests, and statutory liens.  Those three categories are mutually

exclusive . . . ."); *see also Holmes v. Cmty. Hills Condo. Ass'n*, No. 15-6834, 2016 WL 4950993,

at *4 (D.N.J. Sept. 16, 2016) ("The [three] categories [of liens] are mutually exclusive.").

   Having set forth the three types of liens recognized by the Bankruptcy Code, I turn to the

treatment of claims under a chapter 13 plan.  Broadly speaking, "[c]hapter 13 of the Bankruptcy

Code permits debtors to structure repayment of their indebtedness through a plan approved by

the bankruptcy court." *In re Johns*, 37 F.3d 1021, 1023 (3d Cir. 1994).  A chapter 13 plan may,

in general, modify the rights of holders of secured claims.[6]  *See* 11 U.S.C. §§ 506(a) and

1322(b)(2).  Nonetheless, pursuant to § 506 of the Bankruptcy Code, the treatment of a

nominally secured claim in bankruptcy is contingent upon the value of the collateral; the claim is

considered secured "only to the extent of the value of the property on which the lien is fixed; the

remainder of that claim is considered unsecured." *Ron Pair Enterprises*, 489 U.S. at 239; *In re

Ferandos*, 402 F.3d 147, 151 (3d Cir. 2005).  To the extent that a nominally secured claim

exceeds the value of the collateral, the claim is considered unsecured, and may be "stripped" or

"crammed down." *In re Ferandos*, 402 F.3d at 151 ("[A] claim that is not fully collateralized

can be modified, and the creditor said to be 'crammed down' to the value of the collateral."); *see*

11 U.S.C. § 506(a)(1).

---

[6] "Secured claims" are claims "by creditors against the estate that are secured by a lien on property in which the estate has an interest." *Ron Pair Enterprises*, 489 U.S. at 239.

Significantly, however, § 1322(b)(2) limits the modification of secured claims.  Under § 1322(b)(2), a debtor may "modify the rights of holders of secured claims, *other than a claim secured only by a **security interest** in real property that is the debtor's principal residence . . . ."* 11 U.S.C. § 1322(b)(2) (emphasis added).  Thus, here, assuming the other requirements of the anti-modification provision are met, whether the Association's claim falls within the ambit of § 1322(b)(2) depends on the nature of the lien; *i.e.*, whether it is a consensual lien (security interest) or a statutory lien.  Before the Bankruptcy Court, the Association argued that the lien was a consensual lien protected from modification by § 1322(b)(2).  In opposition, Debtors maintained that the lien was statutory, and thus, subject to modification.

The Bankruptcy Court rejected both arguments, finding instead that there were two separate liens, one statutory and one consensual, operating simultaneously to secure the Association's single Claim.  Significantly, the Bankruptcy Court began its analysis by explaining that it was accepting the Association's argument that, pursuant to the New Jersey Supreme Court's decision in *Qian v. Toll Bros. Inc.*, 223 N.J. 124 (2015), the Condominium Act applied to the case, despite the fact that the Association was a homeowners association, as opposed to a "condominium association" under the Act.[7]  However, as this Court will explain, *infra*, the Bankruptcy Court, while acknowledging that it was bound by state law, nonetheless expressed its reservations about construing *Qian* as creating a broad rule that the Condominium Act applies to *all* cases involving homeowners associations – irrespective of whether the common interest development at issue was established as a "condominium" under the Act.  *See In re Keise*, 564 B.R. at 258-59.  This is the precise issue that the Court will discuss on this appeal.

---

[7] The Bankruptcy Court noted that, in the proceedings below, Debtors did not contest that the Condominium Act applied.

6

After reluctantly finding that the Condominium Act applied, without rendering any factual findings, the Bankruptcy Court set forth the parties' arguments regarding the nature of the lien held by the Association, which, in turn, required the Bankruptcy Court to examine:  (1) the provisions in the Condominium Act pertaining to liens; and (2) the provisions of the Declaration of Covenants and Restrictions (the "Declaration") between the parties regarding liens.  In that regard, the Condominium Act provides, in relevant part, that:

a. The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner, together with interest thereon and, if authorized by the master deed or bylaws, late fees, fines and reasonable attorney's fees; provided however that an association shall not record a lien in which the unpaid assessment consists solely of late fees. Such lien shall be effective from and after the time of recording in the public records of the county in which the unit is located of a claim of lien stating the description of the unit, the name of the record owner, the amount due and the date when due. Such claim of lien shall include only sums which are due and payable when the claim of lien is recorded and shall be signed and verified by an officer or agent of the association. Upon full payment of all sums secured by the lien, the party making payment shall be entitled to a recordable satisfaction of lien. Except as set forth in subsection b. of this section, all such liens shall be subordinate to any lien for past due and unpaid property taxes, the lien of any mortgage to which the unit is subject and to any other lien recorded prior to the time of recording of the claim of lien.

b. A lien recorded pursuant to subsection a. of this section shall have a limited priority over prior recorded mortgages and other liens, except for municipal liens or liens for federal taxes, to the extent provided in this subsection. This priority shall be limited as follows:

(1) To a lien which is the result of customary condominium assessments as defined herein, the amount of which shall not exceed the aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien.

(2) With respect to a particular mortgage, to a lien recorded prior to: (a) the receipt by the association of a summons and complaint in an action to foreclose a mortgage on that unit; or (b) the filing with the proper county recording office of a lis pendens giving notice of an action to foreclose a mortgage on that unit.

(3) In the case of more than one association lien being filed, either because an association files more than one lien or multiple associations have filed liens, the

total amount of the liens granted priority shall not be greater than the assessment for the six-month period specified in paragraph (1) of this subsection. Priority among multiple filings shall be determined by their date of recording with the earlier recorded liens having first use of the priority given herein.

(4) The priority granted to a lien pursuant to this subsection shall expire on the first day of the 60th month following the date of recording of an association's lien.

(5) A lien of an association shall not be granted priority over a prior recorded mortgage or mortgages under this subsection if a prior recorded lien of the association for unpaid assessments has obtained priority over the same recorded mortgage or mortgages as provided in this subsection, for a period of 60 months from the date of recording of the lien granted priority.

(6) When recording a lien which may be granted priority pursuant to this act, an association shall notify, in writing, any holder of a first mortgage lien on the property of the filing of the association lien. An association which exercises a good faith effort but is unable to ascertain the identity of a holder of a prior recorded mortgage on the property will be deemed to be in substantial compliance with this paragraph.

N.J.S.A. § 46:8B-21(a)-(b).  On the other hand, the Declaration provides, in relevant part, as

follows:

Section 1. <u>Creation of the Lien</u>. Every Lot Owner by acceptance of a deed or other conveyance for a Lot, whether or not it shall be so expressed in any such deed or other conveyance, shall be deemed to covenant and agree to pay to the Association such sums, by way of annual or special Common Expense assessments or charges as hereinafter more particularly described. Each such assessment, together with such interest thereon, late charges, and cost of collection thereof (including reasonable attorneys' fees) shall be a continuing lien upon the Lot against which each such assessment is made and shall also be the personal obligation of the Owner of such Lot at the time when the assessment fell due. Further the Township of Neptune shall have a continuing lien against each such Lot for its pro rata share of all real estate taxes due and payable to the Township of Neptune by the Association for real estate taxes assessed against the Common Property. Such lien shall be apportioned equally among all Lots and shall be enforceable by the Township of Neptune in the manner provided by law with respect to the real estate taxes assessed directly against each such Lot.

*In re Keise*, 564 B.R. at 261 (quoting Declaration, 28-29).

As noted by the Bankruptcy Court, the Association argued that its lien on the unpaid

assessments was consensual rather than statutory.  To that end, the Association maintained that

because the Declaration created a security interest, and because the definition of "statutory lien" under the Bankruptcy Code excludes security interests, the lien at issue in this case must be consensual.  Alternatively, the Association argued that the Condominium Act does not create a lien, but rather, merely serves as a priority mechanism for the enforcement of the consensual lien.  And, inasmuch as N.J.S.A. § 46:8B-21(b) gives partial priority to six months of unpaid assessments, ahead of the existing mortgage held by New York Mellon, the Association argued that a portion of its lien was secured, thereby precluding modification of the entire lien under § 1322(b)(2).  In opposition, Debtors argued, in relevant part, that the lien at issue in this case was statutory, arising from § 46:8B-21 of the Condominium Act.

Ultimately, the Bankruptcy Court rejected the arguments of both parties, finding instead that the Association's Claim was secured by two separate liens, one consensual and one statutory.  *See In re Keise*, 564 B.R. at 263–64 ("[T]his Court views the Association's claim as secured simultaneously by two separate liens—one consensual lien created by the Declaration, and one statutory lien created by the New Jersey Condominium Act— with each lien available to the Association to enforce its claim.").  Specifically, the Bankruptcy Court found that the language of the Condominium Act created a statutory lien, separate and apart from the lien created by the Declaration, and thus, the existence of the consensual lien did not preclude the creation of a statutory lien under the Act.  *Id.* at 264.  And, because the Bankruptcy Court found that the Claim was secured by both a security interest and a statutory lien, and because the anti-modification clause of § 1322(b)(2) applies exclusively to "a claim secured *only* by a security interest in real property that is the debtor's principal residence," 11 U.S.C. § 1322(b)(2), the Bankruptcy Court found that the Association's claim was not protected from modification.  *Id.* at 265.  Accordingly, pursuant to the priority scheme in N.J.S.A. § 46:8B-21(b), the Bankruptcy

Court confirmed the proposed Plan, which treated the Association's statutory lien as secured in the amount of $1,710, representing six months of unpaid assessments, with the residual amount of the Association's statutory lien subordinated to the mortgage held by New York Mellon.  *Id.* at 265-66.

## II.   <u>PROCEDURAL HISTORY</u>

On March 17, 2017, the Association filed its Notice of Appeal from the decision of the Bankruptcy Court.  ECF No. 1.  On April 27, 2017, the Association filed its brief in support. ECF No. 6.  Debtors filed their opposition brief on May 26, 2017.  ECF No. 9.  The Association submitted a reply brief on June 8, 2017.[8]  ECF No. 15.

## III.   <u>LEGAL STANDARD</u>

"The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal."  *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005).  In that regard, district courts review the bankruptcy court's "legal determinations *de novo* and its factual findings for clear error."  *In Re: J & S Properties, LLC*, 872 F.3d 138, 142 (3d Cir. 2017).  Under the clearly erroneous standard, the bankruptcy court's factual findings will not be disturbed unless reviewing court is "left with the definite and firm conviction that a mistake has been committed.'"  *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746 (1948)).  Where the issues on appeal present both findings of fact and conclusions of law, the reviewing court

---

[8] I note that On May 26, 2017, Debtors filed a motion to supplement the record regarding the Declaration.  ECF No. 10.  In response, the Association filed a motion to strike Debtors' motion to supplement the record on June 8, 2017.  ECF No. 14.  However, because, as discussed, *infra*, the Court will remand this matter to the Bankruptcy Court to develop the factual record, the parties' motions are denied as moot.

applies "a clearly erroneous standard to 'integral facts,' but exercise[s] plenary review of the [bankruptcy] court's interpretation and application of those facts to legal precepts." *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011) (quoting *In re Exide Techs.*, 607 F.3d 957, 962 (3d Cir. 2010)).

## IV.    **DISCUSSION**

The Association argues that the Bankruptcy Court erred in finding that two separate liens exist, because § 46:8B-21 of the Condominium Act does not create a lien, but rather, simply elevates a portion of the Association's lien – corresponding to six months of unpaid assessments – to a super-priority position over the existing mortgage on the Property. The Association further contends that because the elevated portion of its lien is secured by Debtors' principal residence, the entirety of the Claim cannot be modified under 11 U.S.C. § 1322(b)(2). Thus, the Association maintains, the Bankruptcy Court erred in confirming the Plan, because the Plan impermissibly crams down the Association's Claim. In opposition, Debtors argue, in relevant part, that the Condominium Act is inapplicable to this case, because the Association is a homeowners association, rather than a condominium.[9]

For the reasons that follow, I find that the Bankruptcy Court erred in its determination that it was bound, under *Qian*, to find that the Condominium Act applies to the Association at issue in this case. Rather, because the express language of the Condominium Act, as well as

---

[9] In its reply, the Association argues that because Debtors conceded that the Condominium Act applied in the proceedings below, Debtors are estopped from taking a contrary position on appeal. *See* Appellant's Reply Br., 6. However, the Bankruptcy Court's finding that it was bound, under *Qian*, to find that the Condominium Act applied to the Association was a legal determination, based on the Bankruptcy Court's interpretation of *Qian*. Because the Bankruptcy Court's decision in that regard was a legal conclusion, it is subject to *de novo* review, and thus, an issue that this Court must address on appeal. *See In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 209 (3d Cir. 2011).

relevant New Jersey case law interpreting the Act, provides that the Condominium Act only

applies to "condominiums" established pursuant to the Act, I find that the only plausible reading

of *Qian* is that the community at issue in that case met the statutory definition of a

"condominium."  Accordingly, the discussion that follows is constrained to the threshold

question regarding the applicability and scope of the Condominium Act in this case.

### A.    Common Interest Developments

I begin by setting forth the relevant legislative and judicial backdrop in which common

interest developments, including condominiums and homeowners associations, exist.  New

Jersey recognizes three major categories of common interest developments:  condominiums;

cooperatives; and homeowners associations.  *See* WENDELL A. SMITH ET AL., NEW JERSEY

CONDOMINIUM & COMMUNITY ASSOCIATION LAW 2:1 (GANN, 2018).[10]  Generally speaking,

"[a]ll common interest projects result in each owner having exclusive control of some defined

space, and shared control, through the association of owners, of common land and

improvements."  *Id.*  However, the three forms of common interest developments "are

distinguished according to the way each divides control, responsibility, and ownership interests

in the total area."  *Id.*  Additionally, of the three forms of common interest developments, only

condominiums implicate the Condominium Act, with the other forms of common interest

developments falling outside of the Act's ambit.  *See Cape May Harbor Vill. & Yacht Club

Ass'n, Inc. v. Sbraga*, 421 N.J. Super. 56, 70 (App. Div. 2011) ("Condominiums, one form of the

common interest development, are governed by the Condominium Act. . . .  Other common

---

[10] I note that NEW JERSEY CONDOMINIUM & COMMUNITY ASSOCIATION LAW, which is the
seminal New Jersey treatise addressing the law of common interest developments, has been cited
approvingly by the New Jersey Supreme Court.  *See Highland Lakes Country Club & Cmty.
Ass'n v. Franzino*, 186 N.J. 99, 110 (2006) (quoting WENDELL A. SMITH ET AL., NEW JERSEY
CONDOMINIUM & COMMUNITY ASSOCIATION LAW 5 (GANN, 5)).

interest developments are not governed by the Act . . . .").  Because the distinction between a condominium and a homeowners association is critical to this case, the Court will discuss the defining features of those two forms of common interest developments, in turn.

### 1. Condominiums

In 1970, the New Jersey legislature enacted the Condominium Act to "provide for the creation and regulation of condominiums."  *Fox v. Kings Grant Maint. Ass'n, Inc.*, 167 N.J. 208, 218 (2001).  The Act defines a "condominium" as a "form of ownership of real property under a master deed providing for ownership by one or more owners of units of improvements together with an undivided interest in common elements[11] appurtenant to each such unit." N.J.S.A. § 46:8B-3(h).  A condominium "unit" is "a separate parcel of real property which may be dealt with by the owner thereof in the same manner as is otherwise permitted by law for any other parcel of real property."  N.J.S.A. § 46:8B-4.  However, "condominium ownership is distinct from other forms of property ownership because, when an individual purchases a condominium

---

[11] The Condominium Act defines "common elements" as:
  (i) the land described in the master deed;
  (ii) as to any improvement, the foundations, structural and bearing parts, supports, main walls, roofs, basements, halls, corridors, lobbies, stairways, elevators, entrances, exits and other means of access, excluding any specifically reserved or limited to a particular unit or group of units;
  (iii) yards, gardens, walkways, parking areas and driveways, excluding any specifically reserved or limited to a particular unit or group of units;
  (iv) portions of the land or any improvement or appurtenance reserved exclusively for the management, operation or maintenance of the common elements or of the condominium property;
  (v) installations of all central services and utilities;
  (vi) all apparatus and installations existing or intended for common use;
  (vii) all other elements of any improvement necessary or convenient to the existence, management, operation, maintenance and safety of the condominium property or normally in common use; and
  (viii) such other elements and facilities as are designated in the master deed as common elements.
N.J.S.A. § 46:8B-3(d).

unit, he or she simultaneously acquires a proportionate undivided interest in the community's common elements." *Fox*, 167 N.J. at 218; *see* N.J.S.A. § 46:8B-6 ("The proportionate undivided interest in the common elements assigned to each unit shall be inseparable from such unit . . . ."). Stated differently, the purchaser of a condominium unit obtains "a fee simple title to and enjoys exclusive ownership of his or her individual unit while retaining an undivided interest as a tenant in common in the facilities used by all of the other unit owners." *Fox*, 167 N.J. at 219.

The Act provides that a "condominium" is created by "recording . . . a master deed executed and acknowledged by all owners or the lessees setting forth the matters required by [N.J.S.A. § 46:8B-9]." N.J.S.A. § 46:8B-8. Under § 46:8B-9 of the Condominium Act, the master deed must set forth the following matters:

(a) A statement submitting the land described in the master deed to the provisions of the "Condominium Act," P.L.1969, c. 257 (C.46:8B-1 et seq.).

(b) A name, including the word "condominium" or followed by the words "a condominium," by which the property shall thereafter be identified.

(c) A legal description of the land.

(d) A survey of the condominium property in sufficient detail to show and identify common elements, each unit and their respective locations and approximate dimensions. The plans shall bear a certification by a land surveyor, professional engineer or architect authorized and qualified to practice in this State setting forth that the plans constitute a correct representation of the improvements described. The survey and plans shall constitute a condominium plan as defined in section 2 of P.L.1960, c. 141 (C.46:23-9.10).

(e) An identification of each unit by distinctive letter, name or number so that each unit may be separately described thereafter by such identification.

(f) A description of the common elements and limited common elements, if any.

(g) The proportionate undivided interests in the common elements and limited common elements, if any, appurtenant to each unit. These interests shall in each case be stated as percentages aggregating 100%.

(h) The voting rights of unit owners.

14

(i) By-laws.

(j) A method of amending and supplementing the master deed, which shall require the recording of any amendment or supplement in the same office as the master deed before it shall become effective.

(k) The name and nature of the association and if the association is not incorporated, the name and residence address, within this State of the person designated as agent to receive service of process upon the association.

(l) The proportions or percentages and manner of sharing common expenses and owning common surplus.

(m) Any other provisions, not inconsistent with the "Condominium Act," P.L.1969, c. 257 (C.46:8B-1 et seq.), as may be desired, including but not limited to restrictions or limitations upon the use, occupancy, transfer, leasing or other disposition of any unit (provided that any restriction or limitation shall be otherwise permitted by law) and limitations upon the use of common elements.

N.J.S.A. § 468:B-9. Significantly, "'[t]he provisions of the 'Condominium Act' . . . apply solely to real property of interests therein which have been subjected to the terms of [N.J.S.A. § 46:8B-9]." N.J.S.A. § 46:8B-8; *see State v. Panther Valley Prop. Owners Ass'n*, 307 N.J. Super. 319, 327 (App. Div. 1998) ("Only when the master deed sets forth matters required under N.J.S.A. 46:8B–9 will the comprehensive legislation apply to the property.").

The Condominium Act also provides for the creation of a "condominium association"[12] in the master deed. N.J.S.A. § 46:8B-12. The condominium association, which may "be any entity recognized by the laws of New Jersey, including but not limited to a business corporation or a nonprofit corporation," is "responsible for the administration and management of the condominium and condominium property,[13] including but not limited to the conduct of all

---

[12] The Condominium Act defines an "association" as "the entity responsible for the administration of a condominium, which entity may be incorporated or unincorporated." N.J.S.A. § 46:8B-3(b).

[13] The Condominium Act defines "[c]ondominium property" as "the land covered by the master deed, whether or not contiguous and all improvements thereon, all owned either in fee simple or

activities of common interest to the unit owners." N.J.S.A. § 46:8B-12. Specifically, the association "is charged with various duties, including the maintenance of the common elements and the assessment and collection of funds for common expenses." *Fox*, 167 N.J. at 220 (citing N.J.S.A. § 46:8B-14).

### 2. *Homeowners Associations*

Conversely, "homeowners association developments combine a fee simple form of ownership with an automatic homeowners association," as follows:

> [T]he defined space which is to be exclusive to a particular owner is located on a separate, subdivided lot, and legal title to the individual lots and improvements on each vests exclusively in the owner of each such lot. Open space, recreation and other common facilities are located on other lots, title to which is vested in a non-profit homeowners association which holds such title for the benefit of its members. A recorded declaration of covenants and restrictions establishes that the owner of each individual lot automatically acquires membership in the association upon acquisition of title to his lot.

*Highland Lakes*, 186 N.J. at 110 (quoting WENDELL A. SMITH, ET. AL., NEW JERSEY CONDOMINIUM & COMMUNITY ASSOCIATION LAW 5 (GANN, 5)) (internal quotation marks omitted).

Unlike condominiums, homeowners associations lack "any statutory origin." *Highland Lakes*, 186 N.J. at 110; *see Sbraga*, 421 N.J. Super. at 70 ("Homeowners associations in common interest developments (as opposed to condominiums) do not arise out of a statute."). Rather, "homeowners' associations are created in New Jersey by the filing of a declaration of covenants, conditions, and restrictions contained in deeds and association bylaws." *Highland Lakes*, 186 N.J. at 110. The bylaws, which may be recorded, "set forth rules and regulations governing the association's members." *Sbraga*, 421 N.J. Super. at 70; *Highland Lakes*, 186 N.J. at 110-11.

---

under lease, and all easements, rights and appurtenances belonging thereto or intended for the benefit thereof." N.J.S.A. § 46:8B-3(i).

Additionally, "[i]t is well established that membership obligations requiring homeowners in a community to join an association and to pay a fair share toward community maintenance are enforceable as contractual obligations," and that "such recorded covenants also can create a lien on the property." *Highland Lakes*, 186 N.J. at 111; *see* SMITH, ET. AL., *supra*, at 2:2 ("Funds for the maintenance and operation of the common facilities are raised by the [homeowners association] from assessments levied against each owner.  Declarations establishing [homeowners associations] must also provide that assessments constitute a lien against each member's lot . . . .").

### B.   Judicial Recognition of the Distinction between Condominiums and Homeowners Associations

Prior to the New Jersey Supreme Court's decision in *Qian*, it was well-settled that the Condominium Act applied only to condominiums, and thus, that other forms of common interest developments, including homeowners associations, fell outside of the Act's purview.  *See Sbraga*, 421 N.J. Super. at 70 (explaining that while "[c]ondominiums, one form of the common interest development, are governed by the Condominium Act . . . [o]ther common interest developments [including the homeowners association at issue in that case] are not governed by the Act . . . ."); *see*, *e.g.*, *Mulligan v. Panther Valley Prop. Owners Ass'n*, 337 N.J. Super. 293, 301 (App. Div. 2001) (finding that a homeowners association that governed a common interest development was "not subject to the terms and provisions of the Condominium Act," because the development, as a whole, did not qualify as a condominium); *Panther Valley*, 307 N.J. Super. at 327 (finding that a homeowners association governing a mixed common interest development, consisting of single-family residences, townhouses, and condominiums, was not subject to the Condominium Act); *Esposito v. Riviera at Freehold Homeowners Ass'n, Inc.*, No. A-6001-09T1, 2011 WL 2566171, at *4 (N.J. Super. Ct. App. Div. June 30, 2011) (affirming the trial court's

finding that since the homeowners association at issue "was not a condominium association, the Condominium Act did not apply . . . ."); *Ruggiero v. Valleybrook Homeowners' Ass'n, Inc.*, No. A-5073-06T3, 2008 WL 2219951, at *3 (N.J. Super. Ct. App. Div. May 30, 2008) ("Initially, we note that the [homeowners association] is not a condominium association. Consequently, it is not subject to the Condominium Act."); *In re Nacinovich*, No. 12-30874, 2013 WL 2367862, at *2–3 (Bankr. D.N.J. May 31, 2013) (recognizing that, unlike a condominium subject to the Condominium Act, the common interest development at issue in that case, which was managed by a homeowners association, was "governed by its own, privately created set of rules."); *see also Fox*, 167 N.J. at 223 (recognizing that the Condominium Act is inapplicable to certain umbrella associations, including homeowners associations, that govern the common elements in common interest developments).

For example, in *Panther Valley*, the State of New Jersey filed suit against a homeowners association that owned and maintained the roads within a private common interest development, seeking to enjoin the homeowners association from imposing its own rules, regulations, and fines against residents of the community for motor vehicle violations. 307 N.J. Super. at 322. The community at issue consisted of "over 2,000 single-family homes, townhouses and condominium units." *Id.* The homeowners association had been incorporated by the community's developer, who "delegated to it the authority to maintain and administer the community's common property, including parks, playgrounds, open spaces and other facilities held for the benefit of the residents." *Id.* at 323. Additionally, [u]nder the terms of the deed of conveyance and the association's bylaws, individuals purchasing property within the community automatically become members of [the association]." *Id.*

18

In the proceedings below, the lower court "determined that [the association] was 'indirectly' governed by the Condominium Act, N.J.S.A. 46:8B–1 to –38, because the . . . community contained some condominium units." *Id.* at 325.  On appeal, the Appellate Division reversed the trial court's finding that the Condominium Act was applicable.  *Id.* at 327.  At the outset, the Appellate Division set forth the definition of a "condominium" under the Condominium Act, explaining that a "'condominium' is created upon the recording of a master deed executed and acknowledged by the owners," and that the Condominium Act only applies "when the master deed sets forth matters required under N.J.S.A. 46:8B–9." *Id.* at 327.  In finding that the community at issue in that case did not constitute a condominium development, the Appellate Division reasoned as follows:

> The problem with the motion judge's conclusion that [the Condominium Act] applies here is that [the community] is not a condominium development. The community is a mix of single-family residences, townhouses and condominiums. A small minority of the units are governed by the Condominium Act. The development scheme of the community, *established by its covenants and restrictions*, includes substantial common properties deeded to [the association] for the mutual use and enjoyment of the residents. This type of "common interest development" *which is governed by a homeowners association to which all property owners are members*, unlike a condominium development, *has no statutory guidelines for its establishment*.

*Id.* at 327-28 (citing WENDELL A. SMITH, NEW JERSEY CONDOMINIUM & COMMUNITY ASSOCIATION LAW 2 (GANN, 1993)) (emphasis added).  Accordingly, the Appellate Division concluded that even though the homeowners association governed a community that included some condominium units, because the development, as a whole, was a homeowners association development, rather than a condominium development, the Condominium Act did not apply.  *Id.* at 328.

Additionally, in *Highland Lakes*, a homeowners association in a common interest community brought an action against a homeowner, seeking to compel the homeowner to pay his

unpaid membership fees, dues, and common assessments, as well as arrears attributable to prior owners of the property.  186 N.J. at 103.  The community at issue was a private, single family residential community governed by a not-for-profit homeowners association.  *Id.* at 104. Restrictive covenants in the community's master deed, and in the association's bylaws, required all property owners in the community to join the homeowners association.  *Id.*  At issue before the New Jersey Supreme Court was whether the covenants in the community's deeds and bylaws, which stated that the homeowners association would have a lien on the real property of any member who failed to pay dues, assessments, or initiation fees, provided homeowners with adequate notice "that they would be responsible for arrears from prior owners and that their property would be encumbered by an equitable servitude for those arrears."  *Id.* at 103. Significantly, in deciding that issue, the New Jersey Supreme Court neither applied the Condominium Act nor discussed its potential application.  To the contrary, the Court highlighted the distinct nature of homeowners association developments, observing that homeowners associations are formed by "the filing of a declaration of covenants, conditions, and restrictions contained in deeds and association bylaws," rather than by statute.  *Id.* at 110.  The *Highland Lakes* Court's finding that homeowners associations are not governed by statute, including by the Condominium Act, has not been overruled, and is consistent with the case law and secondary sources already discussed in this Opinion.

### C.    *Qian* and the Bankruptcy Court's Decision

As indicated, *supra*, the Bankruptcy Court determined that it was bound, under *Qian*, to find that the Condominium Act applied to this case.  Before turning to my analysis of that finding, I will briefly discuss the *Qian* decision, as well as the Bankruptcy Court's interpretation of that case.

In *Qian*, a resident of a common interest community, which consisted of 102 detached single-family homes, brought a personal injury action against several defendants, including a homeowners association, after she fell on ice on a sidewalk within the community. 223 N.J. at 127-28. Homeowners within the community took title to their individual units, with ownership of the community's common areas, including its sidewalks and walkways, vested in the homeowners association.[14] *Id.* at 128. The trial court granted summary judgment to the homeowners association and dismissed the resident's complaint, and the Appellate Division affirmed. *Id.* at 127. On appeal, the New Jersey Supreme Court identified the issue before it as whether the homeowners association had a "duty to clear snow and ice from the community's private sidewalks," or whether it was immune from suit under New Jersey's common law rule, which provides that residential landowners are not responsible for clearing public sidewalks abutting their properties of snow and ice for the safe travel of pedestrians. *Id.*

The *Qian* Court reversed, holding that the homeowners association had a duty to keep its private sidewalks reasonably safe, because "[r]esidential public-sidewalk immunity does not apply in the case of a sidewalk privately owned by a common-interest community." *Id.* In so holding, the Court explained, first, that under the common law doctrine of premises liability,

---

[14] While an association's ownership of the common areas is generally indicative of a homeowners association, rather than a condominium, exceptions to that general rule exist, and thus, the *Qian* Court's statement that the association owned the common elements is not dispositive of the issue of whether the community in that case was a condominium within the meaning of the Condominium Act. *See*, *e.g.*, *All. For Disabled In Action, Inc. v. Renaissance Enterprises, Inc.*, 371 N.J. Super. 409, 414 (App. Div. 2004), *aff'd*, 185 N.J. 339 (2005) ("Defendant Renaissance Village I, a *[c]ondominium* . . . is the condominium association that owns and controls the project's common elements.") (emphasis added); *see also Jennings v. Borough of Highlands*, 418 N.J. Super. 405, 420 (App. Div. 2011) ("The condominium association does not, *generally*, own legal title to the common elements.") (emphasis added). Indeed, as the Court will further explain, *infra*, the only plausible reading of the *Qian* Court's decision is that the community at issue in that case was a condominium within the meaning of the Condominium Act.

whether a residential landowner has a duty to clear a sidewalk for snow and ice is contingent upon whether the sidewalk is classified as "private" or "public." *Id.* at 137-38.  In determining whether a sidewalk is private or public, courts look to who owns or controls the sidewalk, as opposed to who uses it.  *Id.* at 138.  Applying that rule, the *Qian* Court found that, under the community's governing documents, including its bylaws and declaration of covenants, easements, and restrictions, the community's sidewalks were private, because they were common elements owned and managed by the homeowners association.  *Id.* at 138-39.  Accordingly, because the community's sidewalks were private, rather than public, the Court found that residential public-sidewalk immunity did not apply, and thus, that the homeowners association had a duty to keep those private sidewalks reasonably safe.  *Id.* at 142.

Significantly for the case at bar, the *Qian* Court also found – in a footnote without elaboration or explanation, and notwithstanding the case law outlined by this Court above – that the Condominium Act applied to the homeowners association in that case.  *Id.* at 139 n. 8.  As the Court observed, the Condominium Act charges associations formed thereunder with responsibility for the "maintenance, repair, replacement, cleaning and sanitation of the common elements." N.J.S.A. § 46:8B-14(a).  Thus, the *Qian* Court reasoned, the association's statutorily imposed duty to maintain the sidewalk further bolstered its conclusion that the sidewalk at issue was private, rather than public.  *Id.*

Turning to the instant case, the Bankruptcy Court found that it was bound, under *Qian*, to apply the Condominium Act to this case, because:  (1) the facts of this case, involving a homeowners association governing a common interest development of single-family townhomes, closely resembled the community and association at issue in *Qian*; and (2) the parties did not contest that the Condominium Act applied in the proceedings below.  *See In re Keise*, 564 B.R.

at 259–60 ("[T]his Court is cognizant that the holding in *Qian* represents the controlling New Jersey Supreme Court precedent. . . . [T]he facts of this case are sufficiently analogous to those of Qian to warrant its application and, as noted previously, the parties agree that the Condominium Act applies.").  Nonetheless, the Bankruptcy Court expressed "reservations regarding the blanket application of the Act to cases involving homeowners associations . . . ." *Id.* at 258.  First, the Bankruptcy Court noted that it found the reasoning underlying the *Qian* Court's application of the Condominium Act lacking, noting that in the supporting footnote, the *Qian* Court cited to two prior decisions that involved communities that were expressly classified as condominiums.  *Id.* at 258.  Second, the Bankruptcy Court explained that the decision in *Qian* failed to address prior New Jersey cases that had found the Condominium Act inapplicable to homeowners associations.  *Id.* at 259.  Finally, the Bankruptcy Court noted that the Condominium Act itself provides that it only governs "condominiums" established under N.J.S.A. § 46:8B-9, and that the community in this case appears to be lacking several of the requirements of that section.  *Id.*  Nonetheless, because it viewed the community here as analogous to the community at issue in *Qian*, the Bankruptcy Court found that it was bound by that decision, and applied the Condominium Act.[15]  *Id.* at 260.

> **D.**    ***Qian* does not Compel the Conclusion that the Condominium Act is Applicable to this Case**

While this Court acknowledges that the New Jersey Supreme Court's rulings on issues of state law are binding, I disagree with the Bankruptcy Court's determination that *Qian* compels a finding that the homeowners association at issue in this case is governed by the Condominium

---

[15] Importantly, in finding that the Condominium Act applied, the Bankruptcy Court did not render a factual finding as to whether a "condominium," as defined under the Condominium Act, had been created; *i.e.*, the Bankruptcy Court did not render a finding as to whether there was recorded a master deed setting forth the matters required under N.J.S.A. § 468:B-9.

Act.  To the contrary, I find that the only plausible reading of *Qian* is that the community at issue

in that case was a condominium, and thus, that the *Qian* decision did not establish a blanket rule

that the Condominium Act is applicable to all homeowners associations, or otherwise alter

existing law regarding the application of the Condominium Act.  Several reasons support this

Court's conclusion.

First, as this Court has already explained, prior to *Qian*, a long line of cases in New

Jersey, including Supreme Court cases, rejected the proposition that the Condominium Act

applied to common interest developments other than condominiums, including homeowners

associations.  *See Highland Lakes*, 186 N.J. at 110 (finding that homeowners associations are

governed by declarations, covenants, and bylaws, rather than by statute); *Sbraga*, 421 N.J. Super.

at 70 (observing that the Condominium Act only applies to condominiums, and thus, that

homeowners associations and other forms of common interest developments fall outside of the

Act's scope); *Mulligan*, 337 N.J. Super. at 301 (finding that a homeowners association was not

subject to the Condominium Act); *Panther Valley*, 307 N.J. Super. at 327 (same).  Had the *Qian*

Court intended to overrule or abrogate those decisions, it undoubtedly would have done so

expressly.  However, the *Qian* decision is bereft of either a discussion of, or reference to, those

prior decisions.  Nor does the *Qian* Court's decision address the express language of the

Condominium Act itself, which provides that the Act only applies to properties that are

established as "condominiums" under N.J.S.A. § 46:8B-9.  *See* N.J.S.A. § 46:8B-8 ("The

provisions of the 'Condominium Act' . . . shall apply solely to real property of interests therein

which have been subjected to the terms of [N.J.S.A. § 46:8B-9].").  Accordingly, I find that *Qian*

does not stand for the broad proposition that the Condominium Act applies to *all* homeowners

associations, or otherwise alter the existing state of the law regarding the Condominium Act's inapplicability to common interest developments other than condominiums.

Second, and relatedly, my finding that the association in *Qian* necessarily must have been a condominium is buttressed by the fact that, in the footnote determining that the Condominium Act applied, the *Qian* Court cited to two cases, *Brandon Farms Prop. Owners Ass'n, Inc. v. Brandon Farms Condo. Ass'n, Inc*, 180 N.J. 361 (2004) and *Port Liberte Homeowners Ass'n, Inc. v. Sordoni Const. Co.*, 393 N.J. Super. 492 (App. Div. 2007), each of which involved communities that were established as "condominiums" under the Condominium Act. *See Qian*, 223 N.J. at 139 n. 8. Specifically, although *Brandon Farms* involved an umbrella organization, it was undisputed that the community at issue included "condominiums" within the meaning of the Act, and that a "condominium association" was also a party in the litigation. *See* 180 N.J. at 134-35. Similarly, although *Port Liberte* involved both a homeowners association and a condominium association, the community at issue in that case was "a residential condominium development . . . comprised of single-family detached homes, townhomes, and mid-rise buildings, *established pursuant to the New Jersey Condominium Act, N.J.S.A. 46:8B–1 to –38.*" 393 N.J. Super. at 498 (emphasis added). Accordingly, I find that the *Qian* Court's reliance on cases involving condominiums and condominium associations, rather than cases that involve homeowners associations exclusively, is indicative of the fact that the community at issue in *Qian* must have involved condominiums as defined under the Act.

Finally, contrary to the Bankruptcy Court's finding and the arguments of the Association, the Court finds that the factual similarities between the community at issue in *Qian* and the community in this case do not compel a finding that the Condominium Act is applicable. To that end, despite the structural similarities between the housing developments in both cases, the

Condominium Act expressly states that it only applies to properties that meet the statutory requirements of a "condominium." *See* N.J.S.A. § 46:8B-8 ("The provisions of the 'Condominium Act' . . . shall apply *solely* to real property of interests therein which have been subjected to the terms of [N.J.S.A. § 46:8B-9]."). In that regard, the Act provides that a "condominium" is created by recording a master deed that is executed and acknowledged by all owners, and includes the twelve elements required under N.J.S.A. § 46:8B-9. *See* N.J.S.A. §§ 46:8B-8 and 46:8B-9. As a result, because the structure of housing units, standing alone, is not dispositive of whether a community qualifies as a "condominium" for the purposes of the Condominium Act, this Court is not bound by the *Qian* Court's decision to apply the Condominium Act.[16]

Indeed, a community of attached townhomes can assume the form of a homeowners association development. *See* SMITH, ET. AL., *supra*, at 2:2 (explaining that homeowners associations may govern "*townhouse* or other projects [that] have dwellings located on individual lots, but sharing party walls and continuous roofs and facades.") (emphasis added). Thus, absent a factual finding that the common interest community at issue in this case constitutes a "condominium" within the meaning of the Condominium Act, I cannot conclude that the Condominium Act applies. Stated differently, the fact that this case involves townhouses is not dispositive of the issue of whether the Condominium Act applies; rather, for the Condominium Act to apply, the community must meet the requirements of a "condominium" under the Act. I will remand this action for the Bankruptcy Court to render factual findings and an ultimate determination on that issue.

---

[16] Indeed, for the reasons I have already discussed, although not expressly acknowledged in that case, the *Qian* Court presumably found that the community at issue qualified as a "condominium" under the Act.

In sum, the Court finds that the Bankruptcy Court erred in determining that it was bound, under *Qian*, to find that the Condominium Act governs this case. Instead, to determine whether the Condominium Act applies to the Association, the Bankruptcy Court must analyze whether the common interest development at issue constitutes a "condominium," as that term is defined under the Condominium Act. Absent an affirmative answer to that question, the Act does not apply. Accordingly, I will remand this matter to the Bankruptcy Court, where, after developing the requisite factual record, the Bankruptcy Judge shall make that determination in the first instance, and then rule on the legal implications of that decision and whether it changes his legal conclusions. In issuing this remand, I express no view as to the question of whether the lien held by the Association in this case is statutory, consensual, or both.

## V.    CONCLUSION

For the foregoing reasons, the decision of the United States Bankruptcy Court for the District of New Jersey is reversed, insofar as the Bankruptcy Court determined that it was bound, under the New Jersey Supreme Court's decision in *Qian*, to find that the Condominium Act applied to this case. Consistent with this Court's Opinion, this matter is remanded to the Bankruptcy Court, for a determination of whether the Condominium Act applies to the Association in this case, and then to render a decision consistent with that finding.

Dated:  January 30, 2018                              /s/ Freda L. Wolfson
                                                      Hon. Freda L. Wolfson
                                                      United States District Judge